JOHN H. PARK et al., Respondents, v CAPITAL CITIES COMMUNI-
CATIONS, INC., et al., Defendants, and KENNETH V. KLEM-
ENTOWSKI et al., Appellants.

Fourth Department, July 14, 1992

**APPEARANCES OF COUNSEL**

*Connors & Vilardo (Lawrence Vilardo* and *Kevin A. Ricotta* of counsel), for Kenneth V. Klementowski, appellant.

*Borins, Halpern & Stromberg (Harold Halpern* of counsel), for Buffalo Ophthalmologic Society, Inc., appellant.

*Offerman, Mahoney, Cassano, Pigott, Greco & Whalen (Francis Offermann, Jr., of counsel), for respondents.*

## OPINION OF THE COURT

GREEN, J.

Plaintiff, John H. Park, M.D., a licensed ophthalmologist, describes himself as a "pioneer" or "champion" of new techniques in eye surgery. In the early 1980's, Dr. Park appeared on local radio and television stations in Buffalo to discuss cataract surgery and corneal transplants. Dr. Park also invited all three network affiliate television stations in Buffalo to do a story on outpatient cataract surgery performed at his office. Apparently Channel 7 agreed with Dr. Park's assessment of his work as "newsworthy" and broadcast a story on him on August 10, 1982.

After the feature on Dr. Park aired, defendant Kenneth Klementowski, M.D., wrote a letter to Channel 7 reporter Cindy DiBiasi, expressing his displeasure with the story. Dr. Klementowski alerted DiBiasi to a State Health Department investigation of allegations that Dr. Park performed unnecessary eye surgery and engaged in other unethical or illegal conduct. Upon learning of the State Health Department investigation, DiBiasi decided to do another story on Dr. Park. The result was a four-part series, entitled "The Park Probe", broadcast on Channel 7's 6 o'clock news on November 9 through 12, 1982.

At issue before us are statements made by defendants Buffalo Ophthalmologic Society, Inc. (Society) and Dr. Klementowski during the first segment of "The Park Probe." At the time of the broadcast, Dr. Klementowski was the Society's president. "The Park Probe" began with Channel 7 reporter DiBiasi discussing the State Health Department investigation. Dr. Klementowski then states, "Members of the Buffalo Ophthalmologic Society have been called to testify and give statements about * * * this problem. We just want to try to bring it to a head. I guess we all have what you might want to call a rotten apple." A resolution adopted by the Society appeared on the screen, and the segment highlighted by Channel 7 stated: " '[We share] the concern being expressed in the community about possible unnecessary or inappropriate eye surgery.' This is a serious charge".

Plaintiffs, Dr. Park and his professional corporation, commenced an action for libel against the Society and Dr.

Klementowski based upon the quoted statements. Following discovery, both defendants moved for summary judgment dismissing the complaint against them. We conclude that Supreme Court erred in denying defendants' motions.

In *Immuno AG. v Moor-Jankowski* (77 NY2d 235, 256, *cert denied* — US —, 111 S Ct 2261), the Court of Appeals reaffirmed "the particular value of summary judgment, where appropriate, in libel cases" because of the potential chilling effect of protracted litigation on free expression *(see also, Karaduman v Newsday, Inc.,* 51 NY2d 531, 545, *rearg denied* 52 NY2d 899; *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 384, *rearg denied* 42 NY2d 1015, *cert denied* 434 US 969). We conclude that there are several grounds which make summary disposition appropriate in this action.

In a libel action it is for the court to determine, in the first instance, whether the statements at issue are reasonably susceptible of a defamatory connotation *(Silsdorf v Levine,* 59 NY2d 8, 12, *cert denied* 464 US 831; *James v Gannett Co.,* 40 NY2d 415, 419, *rearg denied* 40 NY2d 990; *Tellier-Wolfe v Viacom Broadcasting,* 134 AD2d 860; *Bee Publs. v Cheektowaga Times,* 107 AD2d 382, 386). The statements must be considered in the context of the entire publication and tested in terms of their effect upon the average listener or reader *(see, James v Gannett Co., supra,* at 419-420; *Tellier-Wolfe v Viacom Broadcasting, supra).*

■ In our view, the Society's resolution, which expresses concern about the problem of unnecessary eye surgery, is not reasonably susceptible of the defamatory meaning ascribed to it by plaintiffs. Even assuming that the trier of fact would find the Society's statement to be made of and concerning the plaintiff, it does not contain the hidden factual premise that plaintiff was actually performing unnecessary or inappropriate eye surgery. Rather, the average viewer would interpret the highlighted portion of the resolution as an innocuous expression of concern by a professional organization about the general problem of " 'possible unnecessary or inappropriate eye surgery.' " Consequently, the Society's statement is not defamatory and it is entitled to summary judgment dismissing the complaint.

■ A different analysis applies to Dr. Klementowski's remark, "I guess we all have what you might want to call a rotten apple." Taken in context, the statement is susceptible of the defamatory meaning that Dr. Park is unfit or unethical

in his profession. Our inquiry, however, does not end with the conclusion that the statement may be defamatory, for we must also determine if the statement is merely a nonactionable expression of opinion *(see, Steinhilber v Alphonse,* 68 NY2d 283, 286; *Silsdorf v Levine,* 59 NY2d 8, 13, *supra).*

Whether the "rotten apple" remark is an expression of fact or opinion is a question of law for the court *(see, Silsdorf v Levine, supra,* at 13; *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 381, *supra; Parks v Steinbrenner,* 131 AD2d 60, 62). While we recognize that the distinction between fact and opinion is often difficult to draw, we conclude that Dr. Klementowski's comment falls squarely on the opinion side of the line. His reference to a "rotten apple" is vague, ambiguous, indefinite and incapable of being objectively characterized as true or false *(see, Amodei v New York State Chiropractic Assn.,* 160 AD2d 279, 280, *affd* 77 NY2d 890 [chiropractor accused of " 'unprofessional conduct' "]; *Hollander v Cayton,* 145 AD2d 605, 606 [statements that plaintiff physician was " 'immoral' ", " 'unethical' " and had " 'mismanaged cases' "]; *see also, Steinhilber v Alphonse,* 68 NY2d 283, 287, *supra* [plaintiff a " 'scab' "]; *O'Loughlin v Patrolmen's Benevolent Assn.,* 178 AD2d 117, 118 [police officer a " 'disgrace to the entire police service' "]; *DRT Constr. Co. v Lenkei,* 176 AD2d 1229, *lv denied* 79 NY2d 753 [developers called " 'profit hungry land abusers' "]; *Lukashok v Concerned Residents,* 160 AD2d 685, 686 [developer accused of " 'terrorism' ", " 'malicious' " use of legal system]; *Schwartz v Nordstrom, Inc.,* 160 AD2d 240, 241, *lv denied* 76 NY2d 711 [shareholder accused of being a "Nazi"]; *Parks v Steinbrenner,* 131 AD2d 60, 61, *supra* [umpire called " 'scab' ", incompetent]; *DePuy v St. John Fisher Coll.,* 129 AD2d 972, *lv denied* 70 NY2d 602 [teacher called " 'clown' "]; *Chalpin v Amordian Press,* 128 AD2d 81, 83 [record producer called " 'an unbelievably unscrupulous character' "]).

This is not a case where an otherwise protected expression of opinion may be held to be actionable because the underlying facts are either unstated, falsely represented or distorted *(see, Chalpin v Amordian Press, supra,* at 87). The bases for the "rotten apple" remark, as set forth in the broadcast, are the uncontested facts that plaintiff was the subject of a State Health Department investigation and that local ophthalmologists expected to present evidence against him. As in *Amodei*

*v New York State Chiropractic Assn.* (160 AD2d 279, 281, *supra),* Dr. Klementowski's statement is a "constitutionally protected expression of opinion, describing the nature of the complaints lodged against plaintiff [Dr. Park] and may not be the basis for recovery of monetary damages". Klementowski's personal expression of disapproval is not actionable *(see, Behr v Weber,* 172 AD2d 441, 443, *lv denied* 78 NY2d 861).

■ We conclude that defendants are also entitled to summary judgment on the ground that Dr. Park, a public figure for the purposes of the broadcast, failed to meet his burden of presenting evidence sufficient to raise a triable issue of fact with respect to the maliciousness of defendants' statements.

"The essential element underlying the category of public figures is that the publicized person has taken an affirmative step to attract public attention" *(James v Gannett Co.,* 40 NY2d 415, 422, *supra).* Although a physician would not ordinarily be considered a public figure, Dr. Park stepped outside the private realm of his practice by actively seeking media attention *(see, Greenberg v CBS Inc.,* 69 AD2d 693, 703-705; *Cera v Gannett Co.,* 47 AD2d 797). He was not involuntarily thrust into an unwanted limelight, but rather, invited favorable publicity for his practice *(see, Howard v Buffalo Evening News,* 89 AD2d 793). Thus, under the standard established in *James v Gannett Co. (supra),* Dr. Park is a public figure for purposes of the "Park Probe".

As a public figure, plaintiff had the burden of presenting evidence sufficient to create a triable issue of fact with respect to whether defendants acted with actual malice *(see, Mahoney v Adirondack Publ. Co.,* 71 NY2d 31, 39; *Hollander v Cayton,* 145 AD2d 605, *supra; Park v Lewis,* 139 AD2d 961; *Bee Publs. v Cheektowaga Times,* 107 AD2d 382, 387, *supra; Cera v Gannett Co.,* 47 AD2d 797, *supra).* Plaintiff's conjectures regarding Dr. Klementowski's "spite" over the invasion of his "turf" and a letter suggesting a dispute between the parties four years prior to the broadcast at issue are insufficient to show that, in this case, defendants acted with actual malice *(see, Shapiro v Health Ins. Plan,* 7 NY2d 56, 64; *Klein v Prial,* 32 AD2d 925, *affd* 28 NY2d 506).

■ Further, even if Dr. Park were considered to a be a private person, plaintiffs would not be relieved of their burden of presenting evidence to establish fault. The private defendants are entitled to be held to the same standard as the media defendant when the publication involves a matter of

public concern *(see, Pollnow v Poughkeepsie Newspapers,* 107 AD2d 10, 16, *affd* 67 NY2d 778). We believe that the problem of unnecessary eye surgery is a matter of public concern *(see, O'Brien v Troy Publ. Co.,* 121 AD2d 794, 795; *Greenberg v CBS Inc.,* 69 AD2d 693, 706, *supra),* and defendants are thus answerable in libel only if their conduct is found to be " 'grossly irresponsible' " *(Karaduman v Newsday, Inc.,* 51 NY2d 531, 539, *rearg denied* 52 NY2d 899, *supra; Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199; *Chalpin v Amordian Press,* 128 AD2d 81, 88, *supra; O'Brien v Troy Publ. Co.,* 121 AD2d 794, *supra).* Nothing in the record suggests that defendants' conduct could be characterized as "grossly irresponsible". To the contrary, their actions could more accurately be described as a carefully circumscribed effort to bring the general problem of unnecessary eye surgery to the public's attention.

Accordingly, we conclude that both defendants are entitled to summary judgment dismissing the complaint against them.

CALLAHAN, J. P., LAWTON, BOEHM and DAVIS, JJ., concur.

Order unanimously reversed, on the law, without costs, motions granted and complaint against defendants Klementowski and Buffalo Ophthalmologic Society dismissed.