OPINION OF THE COURT
Louis Sangiorgio, J.
Before the court is a motion to dismiss the three causes of *466 action asserted in the complaint pursuant to CPLR 3211 (a) (7), and to further dismiss plaintiffs claim for attorneys’ fees.
The salient facts are not in dispute. In July of 1994, both plaintiff and defendant were officials in the office of the Staten Island Borough President. Plaintiff was (and remains) the Director of Contract Oversight, and defendant was Chief Investigator of the office’s Investigations Unit. A disagreement arose between the parties over the handling of a matter concerning one Ed Watkins, who is not a party to this action. Mr. Watkins, an African-American, is a basketball coach who runs the Rising Stars Athletic Program, and he negotiated with the Borough President’s office for public funding for this program. When anticipated funds were not immediately forthcoming, Mr. Watkins arrived at the Borough President’s office on or about July 13, 1994 to discuss the matter with someone responsible for the funding. At that time, plaintiff Lee Covino was not in the building, having business elsewhere. Mr. Watkins was escorted out of Borough Hall by a police officer who would not permit him to remain in the waiting room of Borough President Guy Molinari.
Defendant then authorized and dispatched a four-page note to plaintiff, apparently blaming him for this incident.[1] It demanded that plaintiff apologize to Mr. Watkins "for exhibiting unprofessional, racially insensitive attitudes toward him (Watkins) in your official capacity here at Borough Hall”.
Plaintiff then commenced this action, alleging defamation.
The first cause of action asserting libel alleges that defendant composed, published, and distributed the note in question to Borough President Guy Molinari in which plaintiff is characterized as "racially insensitive”, and charges that this is false, scandalous, malicious, defamatory, and libelous. The complaint also asserts that this note, directly and indirectly, and by innuendo, charges plaintiff "with being prejudiced and discriminatory against racial minorities”.
The second cause of action, sounding in slander, alleges that defendant asserted the "racially insensitive” statements to employees of the Staten Island Advance, a daily newspaper.
The third cause of action, also sounding in slander, alleges that defendant repeated the "racially insensitive” statements to employees of the New York Daily News.
*467 Only false assertions of fact may be the subject of an action for defamation; an expression of opinion is not actionable as a defamation, no matter how offensive, vituperative, or unreasonable it may be (Weiner v Doubleday & Co., 74 NY2d 586, cert denied 495 US 930) since it cannot be subjected to the test of truth or falsity (McManus v Doubleday & Co., 513 F Supp 1383, 1385). The proper inquiry, as to whether a particular statement is one of fact or one of opinion, is whether the reasonable reader could have concluded that the statements were conveying facts about the plaintiff (Gross v New York Times Co., 82 NY2d 146, 152, citing 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 139). This inquiry entails an examination of the challenged statement "with a view toward (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to 'signal * * * readers or listeners that what is being read or heard is likely to be opinion, not fact’ ” (Gross v New York Times Co., supra, at 152-153, citing Steinhilber v Alphonse, 68 NY2d 283, 292).
Accusations of racism and prejudice and the like have been found in other jurisdictions to constitute nonactionable expressions of opinion.
In Stevens v Tillman (855 F2d 394, 400, cert denied 489 US 1065), a school principal brought an action in defamation against the president of the parent-teacher association. Part of the statements made by defendant found to constitute protected opinions were:
"We found in our investigation that our principal must be removed * * * Our principal is very insensitive to the needs of our community, which happens to be totally black. She made very racist statements during the boycott. She is a racist. She must go. We cannot have racist people around our children * * * She made numbers of very racist statements, so many that I would use all of my time to explain to you some of the statements that were made.
"Our children are afraid of her. I think discipline is fine. The child must respect the principal; he or she must respect the teachers. But I mean there is no sense — and our children feel as though they are on a plantation. And there is no reason in 1981 why we should have a principal making such *468 racist statements. The teachers of the school have brought to most of our attention that it has been run as a dictatorship, and we do not need a dictatorship in our children’s school * * * They’re being degraded and put down, and it’s all because of a dictatorship with Miss Stevens.
"We have exposed the Mollison pollution * * * Since 1975, the quality of education has gone down at Mollison School and Miss Stevens has sat and watched it. She did nothing about it * * * Miss Stevens is insensitive to the children, the parents and the community. We can no longer allow her to destroy our children’s minds.”
The Seventh Circuit affirmed the District Court’s finding that such statements are necessarily those of an opinion. It rejected plaintiffs claim that a statement of this nature is libel per se, and further rejected plaintiffs claim that it was actionable because it marked her as unfit to be a principal. The court in Stevens (supra) rationalized the usage of such terms in a realistic approach to contemporary political discourse:
"Accusations of 'racism’ no longer are 'obviously and naturally harmful’. The word has been watered down by overuse, becoming common coin in political discourse. Tillman called Stevens a racist; Stevens issued a press release calling Tillman a 'racist’ and her supporters 'bigots’. Formerly a 'racist’ was a believer in the superiority of one’s own race, often a supporter of slavery or segregation, or a fomenter of hatred among the races. Stevens, the principal of a largely-black school in a large city, obviously does not believe that blacks should be enslaved or that Jim Crow should come to Illinois; no one would have inferred these things from the accusation. Politicians sometimes use the term much more loosely, as referring to anyone (not of the speaker’s race) who opposes the speaker’s political goals — on the 'rationale’ that the speaker espouses only what is good for the jurisdiction (or the audience), and since one’s opponents have no cause to oppose what is beneficial, their opposition must be based on race * * * When Stevens called Tillman a 'racist’, Stevens was accusing Tillman of playing racial politics in this way rather than of believing in segregation or racial superiority. That may be an unfortunate brand of politics, but it also drains the term of its former, decidedly opprobrious, meaning.
"So long as any part of the old meaning lingers, there is a tendency to invoke the word for its impact rather than to *469 convey a precise meaning. We may regret that the language is losing the meaning of a word, especially when there is no ready substitute. But we serve in a court of law rather than of language and cannot insist that speakers cling to older meanings. In daily life 'racist’ is hurled about so indiscriminately that it is no more than a verbal slap in the face; the target can slap back (as Stevens did). It is not actionable unless it implies the existence of undisclosed, defamatory facts, and Stevens has not relied on any such implication.” (Supra, at 402.)
In Kimura v Superior Ct. (230 Cal App 3d 1235, 281 Cal Rptr 691), a letter was published protesting a decision by University of California officials, and plaintiff in particular, to cancel an event known as Filipino College Night because it was scheduled for December 7, 1988, the anniversary of the attack on Pearl Harbor. The author of the letter, who was of Japanese descent, accused plaintiff’s actions of reinforcing "the view that [the University] is extremely racist, a growing campus view held by people of color and by enlightened faculty, staff, students, and campus administrators”. (230 Cal App 3d, at 1240, 281 Cal Rptr, at 693, supra.) It went on to state that plaintiff’s decision demonstrates an "incredible level of bigotry” and that plaintiff was a "perfect example * * * of what enlightened people of all ethnic and cultural backgrounds define as 'racist’ and 'bigoted’ ”. (230 Cal App 3d, at 1250, 281 Cal Rptr, at 701, supra.)
After reviewing the case law, the Sixth District Court of Appeal of California concluded that matters of race are a matter of public concern, and the use of the epithet " 'racist’ does not have the tone of a reasoned accusation, but rather is more like the emotional rhetoric characteristic of debate in this area”, and cited Stevens v Tillman (supra) in support. (230 Cal App 3d, at 1246, 281 Cal Rptr, at 698, supra.)
In accord with this rationale is Pritchard v Herald Co. (120 AD2d 956), in which a description of plaintiff as "controversial” and a "black activist” was not actionable since, "when judged by the temper of the times and the current of contemporary public opinion [it] does not arouse in the mind of the average person in the community an evil or unsavory opinion nor expose plaintiff to public hatred, contempt, or aversion”.[2] *470 So too in Raible v Newsweek, Inc. (341 F Supp 804), in which plaintiffs picture was used in an article entitled "The Troubled American — A Special Report on the White Majority” and was who described, among other things, as "racially prejudiced”. The court found such description to be merely common "name calling”, so prevalent in today’s society (see, Stevens v Tillman, supra), and by inference to be a protected expression of opinion.
Application of the three-prong test enunciated in Gross v New York Times Co. (supra) leads to the same conclusion. "Racially insensitive” and "disrespectful racial insensitivity” have no meaning which is readily understood. As defendant points out, a certain set of facts might be viewed as racially insensitive by one group of people who share the same political or social views, but another group might view it as noncontroversial and socially acceptable. The court is not in a position to give its imprimatur to one view or the other; thus the phraseology used is one of opinion. Further, the statements are not capable of being proven true or false (see, O’Loughlin v Patrolmen’s Benevolent Assn., 178 AD2d 117; Park v Capital Cities Communications, 181 AD2d 192, 196, appeal dismissed 80 NY2d 1022, lv denied 81 NY2d 879). In O’Loughlin, remarks that police officers such as plaintiff who refused to contribute to a memorial for officers killed in the line of duty were "a disgrace” and "have no feelings” were held to be indefinite and ambiguous opinions and which cannot be characterized as true or false. Similarly, in the Park case, an ophthalmologist was described in a news report as a "rotten apple”, and it was held that this reference was "vague, ambiguous, indefinite, and incapable of being objectively characterized as true or false”. (181 AD2d, at 196, supra.) How does one empirically measure "racial sensitivities”? It is a concept for which reasonable people might differ. Thirdly, nothing under the circumstances signalled to the reader that what was being read or heard was fact, not opinion, especially in light of the broader social context of such statements described in Stevens v Tillman (supra) herein-above.
Plaintiff argues that the Court of Appeals standard set forth *471 in Immuno AG. v Moor-Jankowski (77 NY2d 235, cert denied 500 US 954), on remand from the United States Supreme Court (497 US 1021), supports his position. Plaintiff points to language in Immuno, which predates Gross (supra), that suggests that the focus is on the context of the whole communication, its tone, and apparent purpose, and further points to language stating that the key inquiry is whether the challenged statement would reasonably appear to make statements of objective fact. Plaintiff, of course, takes the position that the apparent purpose of the note was to cast him in a negative light and that a reasonable person would find these to be statements of fact. However, for the reasons already set forth, such statements cannot be verified or confirmed, except upon reasonable differences of opinion. Further, the rather subjective standard of Immuno was later modified and refined in Gross, which set forth a more objective three-prong test which applies in the case at bar.
In certain circumstances, a statement of opinion may be actionable where it implies that it is based on facts unknown to the reader or listener, making it a "mixed opinion”. (43A NY Jur 2d, Defamation and Privacy, § 14.) The actionability of such a statement is not based on the false opinion itself, but the implication that the speaker knows certain facts unknown to the reader, which support the opinion (id.). It is this exception plaintiff claims is applicable, citing certain portions of the note which state that "this incident follows several other similar occurrences that I am aware of’. However, it appears that Borough President Guy Molinari, the only person identified in the complaint to whom the note was published and distributed, knew about the incidents of alleged racial insensitivity at least two days prior to receiving the note when he ordered an internal investigation thereof. Also, plaintiff himself dispatched a copy of the note to Mr. Molinari on the same day that the note was written, together with a cover note indicating that "due to these allegations, I am requesting to withdraw from all aspects of the Rising Stars program”. (Exhibit A, affirmation of Andrew G. Chelli, Jr., Jan. 23, 1995.) Thus, it cannot be gainsaid that the allegations of instances of racial insensitivity at Borough Hall were unknown to Molinari at the time the note was published (see, Steinhilber v Alphonse, 68 NY2d, at 289, supra; see also, Trustco Bank v Capital Newspaper Div., 213 AD2d 940) or that the parties to the communication did not assume such *472 allegations existed (see, Rand v New York Times Co., 75 AD2d 417, 422).
Plaintiff argues that the note at issue charges him with the commission of a crime, taking it out of the constitutional protections afforded opinions (Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 382). In furtherance of this position, plaintiff argues that defendant’s threat to file a complaint with two governmental agencies constitutes an accusation, whether direct or indirect, of criminal activity. However, the New York City Commission on Human Rights has no criminal jurisdiction, its powers are essentially equitable in nature (see, Administrative Code of City of NY, tit 8, ch 1; § 8-109 [2] [c]). The jurisdiction of the State Division of Human Rights is similarly limited (Executive Law art 15; § 297 [4] [c]). Thus, defendant never charged plaintiff with a specific indictable offense or a crime readily apparent from properly pleaded innuendo (Privitera v Town of Phelps, 79 AD2d 1, 4-5, lv dismissed 53 NY2d 796;[3] Angel v Levittown Union Free School Dist. No. 5, 171 AD2d 770, 772 [2d Dept]; Meyer v Somlo, 105 AD2d 1007, 1008). In this area, the law distinguishes between serious and relatively minor offenses (Liberman v Gelstein, 80 NY2d 429, 435), and there is nothing known in the Penal Law making the conduct for which plaintiff is accused a crime.[4] And assuming arguendo that the words used did imply a crime, it does not necessarily make the remarks actionable statements of fact (Trustco Bank v Capital Newspaper Div., supra). Depending on the context, accusations of this nature can be understood as mere nonactionable "rhetorical hyperbole” or a "vigorous epithet”. (Supra.)
Plaintiff also argues that the statements made tend to injure him in his profession or occupation, similarly taking them out of the constitutional protections afforded opinions. However, in order for such criticisms to cross the borderline between fact and opinions, the accusations must be in terms subject to factual verification (Trump v Chicago Tribune Co., 616 F Supp 1434, 1435) and for the reasons already set forth, *473 the epithet "racially insensitive” cannot be verified as true or false. Further, the added description of plaintiff’s conduct as "unprofessional” does not remove the statements from the constitutional protections afforded them (see, Amodei v New York State Chiropractic Assn., 77 NY2d 890).
The case law is replete with examples of pejorative accusations, otherwise tending to harm one’s professional or business reputation, found to have been protected opinions (see, Weiner v Doubleday & Co., 142 AD2d 100, affd 74 NY2d 586, cert denied 495 US 930 [reference to a psychologist as a "big fat, ugly Jew” was not actionable]; Parks v Steinbrenner, 131 AD2d 60 [baseball owner’s criticism of an umpire as incompetent and biased not actionable]; Tufano v Schwartz, 95 AD2d 852 [2d Dept] [cabinets built and installed by plaintiff were a "total misfit” held not actionable]; Wecht v PG Publ. Co., 353 Pa Super 493, 510 A2d 769 [newspaper cartoons and articles referring to plaintiff, a public official and well-known physician, as "Pittsburgh’s leading defendant” held not actionable]; O’Loughlin v Patrolmen’s Benevolent Assn., 178 AD2d 117, supra [characterizing police officers as a "disgrace” and having "no feelings” held an expression of opinion]; Miller v Richman, 184 AD2d 191 [statement that plaintiff was one of the "worst secretaries” in a law firm held a nonactionable statement of opinion]; Steinhilber v Alphonse, 68 NY2d 283, supra [defendant called plaintiff, a communication worker, a "scab”, "a known failure”, and lacks "talent, ambition and initiative” found to be protected opinion, however "tasteless” it may have been]; Hollander v Cayton, 145 AD2d 605 [2d Dept] [statement that plaintiff, a physician, was immoral, unethical, and had mismanaged cases held nonactionable opinion]; DRT Constr. Co. v Lenkei, 176 AD2d 1229, lv denied 79 NY2d 753 [developers were called "profit hungry land abusers”; held to be a statement of opinion and rhetorical hyperbole]; DePuy v St. John Fisher Coll., 129 AD2d 972, lv denied 70 NY2d 602, [referenced to a teacher as a clown held mere name calling]; Chaplin v Amordian Press, 128 AD2d 81, 83 [record producer called "an unbelievably unscrupulous character”, held to be an opinion]; Ward v Zelikovsky, 136 NJ 516, 643 A2d 972 [defendant made a public statement that plaintiff "hates Jews”; held not libelous]).
Plaintiff takes the position that defendant’s statements must be taken as fact, not as opinion, because "[defendant [made] these statements as if they were fact” (plaintiff’s mem in opposition, at 10). However, this is not the applicable *474 standard. The standard is not the manner in which the speaker or writer presented the statements, but rather, how they are perceived from the perspective of the reasonable reader (or listener); it is whether such reasonable reader or listener could have concluded that the note or statements were conveying facts about the plaintiff (Gross v New York Times Co., supra, at 152; see also, Janklow v Newsweek, Inc., 759 F2d 644, 651, on reh 788 F2d 1300, cert denied 479 US 883; Mr. Chow of N. Y. v Ste. Jour Azur, 759 F2d 219, 224). Such an inquiry is to be made by the court (Gross v New York Times Co., supra, at 153).
The question of whether or not a particular statement constitutes fact or opinion is clearly a question of law, not fact (Rinaldi v Holt, Rinehart & Winston, 42 NY2d, supra, at 381; Silsdorf v Levine, 59 NY2d 8, cert denied 464 US 831; Lapar v Morris, 119 AD2d 635 [2d Dept]). Thus, the question at bar upon defendant’s motion to dismiss pursuant to CPLR 3211 (a) (7) is a legal one, not a factual one (see, Matter of New York State AFL-CIO v Stimmel, 105 Misc 2d 545, 546), and the facts alleged in the complaint are considered as if they are true (Marone v Marone, 50 NY2d 481).
Finally, as to the demand for attorney’s fees, it is well settled that they are not recoverable in the absence of an agreement, statute, or court rule (A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 5).
Accordingly, the motion to dismiss the complaint for failure to state a cause of action is granted. The complaint is hereby dismissed.
Appendix 1
"7/15/94
Lee,
Because of an unfortunate incident that occurred earlier this week at our office involving you, Mr. Edward Watkins, myself and others I am now demanding that you make an apology to Mr. Watkins for exhibiting insensitive attitudes towards him in your official capacity here at Borough Hall. This incident follows several other similiar [sic] occurrences that I am aware of and forces me to make this demand in the interest of preserving good relations with the black community. If an immediate apology is not made I will be forced to file a formal complaint with the commission on Human Rights and the State Division of Human Rights on behalf of Mr. Watkins. I will request a full, formal investigation and ask *475 those agencies to take whatever action is legally warranted against you. My complaint along with Mr. Watkins formal statement will be prepared and presented to those agencies by my attorney, Mr. James Kelley. Again, my action will be discontinued only upon the issuance by you of a formal apology to Mr. Watkins.
Sincerely,
Ray E. Hagemann”

. The text of the note is set forth at length at the end of this memorandum as Appendix 1.

. The Court is aware of the 1964 Second Department decision in Calore v Powell-Savory Corp. (21 AD2d 877, 878), in which the allegedly false statements (not specified in the opinion) were found to be susceptible of *470 meaning that the plaintiff, a union president, was guilty of anti-Negro discrimination against its members. It found the statements to be libelous per se, "in view of the temper of the times and the current of contemporary public opinion”. Apparently, given the contrary conclusion in Pritchard (supra), the temper of the times have changed, as a matter of law.

. In Privitera v Town of Phelps (supra), the complaint was allowed to stand because special damages were pleaded, a fact not present here.

. The only reference found to illegal conduct on the basis of race is Penal Law § 240.30, aggravated harassment in the second degree, which requires striking, shoving, kicking, or subjecting another person to physical contact, or threatens or attempts to do so, because of one’s race or color. Also, damaging premises used for religious purposes, by reason of race or color, is aggravated harassment in the first degree.