314

[635 NYS2d 391]

WILSON H. CURRY, Individually and Doing Business as WILLISTON AUCTIONS, et al., Respondents-Appellants, v HERBERT ROMAN, Individually and Doing Business as HERBERT ROMAN GALLERIES, et al., Appellants-Respondents.

Fourth Department, November 15, 1995

## APPEARANCES OF COUNSEL

*Saperston & Day, P. C.,* Buffalo *(Brian J. Weidner* and *Robert J. Maranto* of counsel), for Herbert Roman and another, appellants-respondents.

*Bouvier, O'Connor,* Buffalo *(John F. Canale* of counsel), for Leo Heaps, appellant-respondent.

*Gross, Shuman, Brizdle & Gillfillan, P. C.,* Buffalo *(Howard B. Cohen* of counsel), for Joseph V. Parlato and another, respondents-appellants.

*Marcus, Knoer & Crawford,* Buffalo *(Robert E. Knoer* of counsel), for Wilson H. Curry and another, respondents-appellants.

## OPINION OF THE COURT

DOERR, J.

These related but not consolidated defamation actions arose out of events that occurred on December 14, 1991, at an auction held to liquidate the art collection of Empire of America (Empire), an insolvent bank. Plaintiffs Joseph V. Parlato and Ardmore, Inc. (collectively Parlato) were retained by the Resolution Trust Corp. to liquidate Empire's remaining works of art. Parlato then hired plaintiffs Wilson H. Curry, an auctioneer, doing business as Williston Auctions, and Williston Auctions, Inc. (collectively Curry) to conduct the auction.

The auction generated a fair degree of advance media attention. Parlato arranged for Curry to make television appearances to advertise the auction on the three local stations and interviews were given to the print media. Moreover, over 4,000 flyers were mailed to announce the auction. A brochure listing the items to be auctioned was provided in advance of the sale. The "jewel" of the auction was a nineteenth century oil painting of Niagara Falls by T.B. Thorpe (the Thorpe painting). The Thorpe painting was listed as lot 149 in the auction program.

Defendant Leo Heaps, a Toronto art dealer, received a brochure and traveled to Buffalo to attend the auction to bid on the Thorpe painting on behalf of himself and defendants Herbert Roman, doing business as Herbert Roman Galleries and Herbert Roman, Inc. (collectively Roman). Roman, the owner of an art gallery in New York City, had authorized Heaps to bid up to $40,000 on the Thorpe painting.

Heaps arrived early and was in attendance when the auction commenced. After Curry had sold the first 15 to 20 lots, Heaps left the auction to get some coffee at a nearby shopping mall. While Heaps was gone, Curry departed from selling the lots in numerical order and sold the Thorpe painting at lot 70 to a former Empire employee for $6,700. When Heaps returned, Curry was selling lot 110. Curry sold lot 148, then skipped to lot 150. Heaps questioned Parlato, then Curry, about what had occurred. They informed him that the Thorpe painting had been sold earlier and that several announcements had been made during the auction to inform the audience that the Thorpe painting would be sold earlier. According to plaintiffs, Heaps then became very agitated and called them "crooks", "liars", "thieves", and "swindlers". Those statements form the basis of plaintiffs' first causes of action against Heaps.

Following his alleged outburst, Heaps telephoned Roman in New York City to tell him what had happened. Roman then contacted, among others, members of the media. Plaintiffs allege, as their second causes of action against Roman, that they were defamed by statements attributed to Roman in a December 18, 1991 story that appeared in the New York Post and in stories that appeared in the Buffalo News on December 18 and 19, 1991. In the Buffalo News stories, plaintiffs are specifically named and Roman is quoted as saying that their actions amounted to " 'absolute thievery' ". In the December 18, 1991 Buffalo News story, Roman alleged that there was " 'some sort of collusion somewhere along the line' ". In the December 19, 1991 story in the Buffalo News, Roman stated that he suspected "collusion between the buyer and auctioneer". In the New York Post story, Roman was quoted as stating that the Thorpe painting was worth $100,000 and was " 'suspiciously given away for only $7,000' ". He further stated that the government " 'lost a lot on the deal' ".

Following discovery, Roman moved for summary judgment dismissing plaintiffs' complaints against him on the ground that plaintiffs, as public figures, had failed to raise a triable issue whether he had acted with actual malice. Plaintiffs cross-moved for summary judgment against Roman and Heaps on the issue of liability. Heaps did not respond to plaintiffs' cross motions nor did he appear at oral argument, and judgment was entered against him by default. Supreme Court found, as a matter of law, that plaintiffs were public figures, but denied Roman's motion for summary judgment dismissing plaintiffs' complaints. The court found that Heaps was acting as Roman's

agent when he made the allegedly defamatory statements, but found a question of fact whether Heaps was acting in furtherance of the agency relationship when he made the statements. The court denied plaintiffs' motions in all other respects.

Heaps then moved to reargue the motions. The court treated the motion as one to vacate the default judgments granted against him, and granted the motion on the condition that Heaps provide an undertaking in the amount of $75,000. Heaps then moved to vacate the condition that he post an undertaking, and the court denied the motion. The undertaking has never been posted.

Roman appeals from the order of Supreme Court, entered July 19, 1994 (appeal No. 1), insofar as it denied his motion to dismiss plaintiffs' complaints on the ground that plaintiffs failed to raise a triable issue whether he acted with actual malice. Heaps appeals from that order on the same ground. The appeal of Heaps must be dismissed, however, because no appeal lies from an order entered upon a default *(see,* CPLR 5511). Plaintiffs cross-appeal from the order insofar as it denied their cross motions for summary judgment on the issue of liability. They also argue that the court improperly failed to determine certain issues as a matter of law.

Heaps appeals from the court's orders, entered October 28 and 13, 1994 (appeal Nos. 4 and 5), insofar as they conditioned the granting of his motion to vacate his default in plaintiffs' actions upon his providing an undertaking in the amount of $75,000. Heaps also appeals from the court's orders, both entered November 2, 1994 (appeal Nos. 2 and 3), that denied his motion to delete from the court's prior orders the condition that he provide an undertaking.

■ To prevail in a defamation action, a public figure plaintiff must show that the alleged statements were about and concerning him, that they were likely to be understood as defamatory by the ordinary person, that the statements were false, and that they were published with actual malice *(see, Bee Publs. v Cheektowaga Times,* 107 AD2d 382, 382-383). Plaintiffs met their burden of proving, as a matter of law, that the statements were about them and that the statements were published. Plaintiffs also met their burden of proving the falsity of the statements as a matter of law *(see, Dibble v WROC TV Channel 8,* 142 AD2d 966).

Plaintiffs further met their burden of proving that the statements were defamatory. Whether a statement is defamatory is first a question for the court *(see, Park v Capital Cities Com-*

*munications,* 181 AD2d 192, 195, *lv denied* 81 NY2d 879; *see also, Silsdorf v Levine,* 59 NY2d 8, 12, *cert denied* 464 US 831; *James v Gannett Co.,* 40 NY2d 415, 419, *rearg denied* 40 NY2d 990). Once the court concludes that the statements are reasonably susceptible of a defamatory connotation, it becomes a jury function, if the words are susceptible of several different meanings, to determine whether that was the sense in which the words were likely to be understood by the ordinary and average reader or listener *(see, Bee Publs. v Cheektowaga Times, supra,* at 386). If the words, however, are unambiguous and admit but one meaning, the court should resolve the issue *(see,* 2 NY PJI 126 [1995 Supp]). We conclude that the words used by defendants, which accused plaintiffs of specific criminal conduct *(see, Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 382, *cert denied* 434 US 969), were clear and unambiguous, and were defamatory as a matter of law. We also agree with plaintiffs that the statements were actionable expressions of fact rather than nonactionable statements of opinion, an issue that must be resolved by the court in the first instance *(see, Steinhilber v Alphonse,* 68 NY2d 283, 290; *Silsdorf v Levine, supra,* at 13; *Miller v Richman,* 184 AD2d 191, 193).

That, however, does not end the inquiry. The court held that plaintiffs were public figures as a matter of law. If that determination is correct, plaintiffs must meet the additional burden of demonstrating, with convincing clarity, that defendants uttered the defamatory statements with actual malice *(see, Sweeney v Prisoners' Legal Servs.,* 84 NY2d 786, 792; *Prozeralik v Capital Cities Communications,* 82 NY2d 466, 474). When the facts are not in dispute and are sufficiently set forth in the papers, a public figure determination should be made by the court as a matter of law *(see, O'Neil v Peekskill Faculty Assn.,* 120 AD2d 36, 44, *lv dismissed* 69 NY2d 984). The essential element in determining public figure status is "that the publicized person has taken an affirmative step to attract public attention" *(James v Gannett Co., supra,* at 422). We agree with the court that plaintiffs, by voluntarily thrusting themselves into the limelight in seeking media attention for the auction, became public figures *(see, James v Gannett Co., supra; Park v Capital Cities Communications, supra,* at 197; *Howard v Buffalo Evening News,* 89 AD2d 793).

To defeat a motion for summary judgment, public figure plaintiffs must demonstrate with convincing clarity that defendants published the statements with knowledge that they were false or with reckless disregard for whether they were

false *(see, Freeman v Johnston,* 84 NY2d 52, 56, *cert denied* — US —, 115 S Ct 576). A finding that defendant acted with reckless disregard for the truth must be supported by evidence that defendant in fact entertained serious doubts about the truth of the statements *(see, Freeman v Johnston, supra,* at 58). The proof submitted by defendants demonstrates that, at the time they made their statements, they believed them to be true. Although neither defendant had investigated the incident before making the statements, the mere failure to investigate is not sufficient to demonstrate actual malice *(see, Sweeney v Prisoners' Legal Servs., supra,* at 793). Summary judgment may be avoided upon a showing that defendants purposefully avoided the truth *(see, Sweeney v Prisoners' Legal Servs., supra).* Plaintiffs, however, have failed to make such a showing. Defendants testified at their depositions that they believed that the statements were true when they made them, based upon their years of experience as art dealers attending numerous auctions. Both testified that they had never encountered an item, particularly the "gem" of the auction, being moved ahead in the bidding. Their conclusions were based upon their experience and are buttressed by letters from numerous auction houses, submitted by Roman, indicating that moving a specific item up in the bidding is, at best, irregular. Plaintiffs have not shown that the events that occurred at the auction were so clear that an "eyewitness could not have perceived and understood anything but the truth" *(Mahoney v Adirondack Publ. Co.,* 71 NY2d 31, 40). The burden placed upon a public figure in demonstrating actual malice is a heavy one, and we conclude that plaintiffs have not met that burden *(see, Freeman v Johnston, supra).* Consequently, plaintiffs' complaints must be dismissed against Roman.

■ The court did not abuse its discretion in vacating the defaults against Heaps on the condition that Heaps post a bond in the amount of $75,000. Conditioning the opening of a default upon the posting of security is an abuse of discretion only if there are no circumstances that require security *(see, Soggs v Crocco* [appeal No. 1], 184 AD2d 1021) or if it is shown that the condition will effectively serve to deprive defendant of his day in court *(see, Rubin v Payne,* 103 AD2d 946, *appeal dismissed* 64 NY2d 754). Heaps failed to present proof of his inability to post a bond and, in light of the pattern of noncompliance on the part of Heaps, a Canadian resident, the court's requiring security as a "corrective measure" *(Rubin v Payne, supra,* at 947) was not an abuse of discretion.

Accordingly, the order of July 19, 1994 should be modified by dismissing plaintiffs' complaints against defendant Roman and otherwise should be affirmed. The orders of October 13 and 28, 1994 and November 2, 1994 should be affirmed.

PINE, J. P., FALLON, CALLAHAN and DAVIS, JJ., concur.

Appeal from order by defendant Leo Heaps unanimously dismissed, and order modified, on the law, and as modified, affirmed, without costs, in accordance with the opinion by DOERR, J.