■ ALFAJR PRINTING AND PUBLISHING COMPANY et al., Respondents, v MORTIMER ZUCKERMAN et al., Appellants. [646 NYS2d 858] —In an action to recover damages for libel, the defendants appeal from an order of the Supreme Court, Kings County (Hurowitz, J.), dated November 22, 1994, which denied

their motion pursuant to CPLR 3211 (a) (7) to dismiss the complaint.

Ordered that the order is reversed, on the law, with costs, the motion is granted, and the complaint is dismissed.

The plaintiffs publish *El Fajr,* a newspaper that serves the Sudanese community. On June 26, 1993, the defendant newspaper, the *Daily News,* published an article in which it discussed efforts by Sheik Omar Abdel-Rahman, a militant Islamic fundamentalist, to raise funds for terrorist activities. The article reported, in conclusion, that "[v]ideo tapes and newspapers, like the Sudanese monthly El Fajr, publicize Abdel-Rahman's appeals for action against the U.S., which he refers to as a 'den of evil and fornication' ".

The plaintiffs, asserting that the statement is false, commenced this action to recover damages for libel. They claimed to be defamed, arguing that the reported statement implied that *El Fajr* allowed an "alleged militant activist with close ties to alleged radical terrorists accused of heinous acts, to use the newspaper to promote their agenda".

The defendants moved to dismiss the complaint, on the ground that it failed to state a cause of action. The defendants asserted that the word about which the plaintiffs complain— "publicize"—does not suggest "support" but, rather, merely, connotes "publish". The Supreme Court denied the defendants' motion and we now reverse. "Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance * * * The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction" *(Aronson v Wiersma,* 65 NY2d 592, 593-594).

We agree with the defendants that it would be a strain to interpret the statement as defamatory. As they state, "the *Daily News* was merely communicating that *[El Fajr]* did exactly what newspapers are supposed to do: namely, to report Abdel-Rahman's words criticizing the U.S. government—which Abdel-Rahman stated to any member of the press willing to listen". Moreover, to this extent, the plaintiffs have not denied—indeed they have admitted—that they published newspaper articles about "militant Arab-Activists". Thus, the challenged language is not actionable and the complaint must be dismissed. Rosenblatt, J. P., Santucci, and Altman, JJ., concur.

Copertino, J., dissents and votes to affirm in the order ap-

pealed from with the following memorandum in which Friedmann, J., concurs: Based on the context of the article in question and the possible interpretations of the word "publicize", I dissent and vote to affirm the order denying the defendants' motion to dismiss the complaint.

The *Daily News* article in question reported that Siddig Ibrahim Siddig Ali and Sheik Omar Abdel-Rahman raised substantial amounts of money at numerous public benefits, and that portions of the proceeds may have been used to fund their terrorist plot to destroy various buildings and landmarks in New York City. The relevant portion of the article read as follows:

"Siddig's fund-raising efforts were an integral part of a chaotic and loosely knit coalition of Islamic fundamentalists in the United States brought together through the oratory of the sheik.

"This community consists of Egyptians, Sudanese and Palestinians—largely educated young men who have left professions in their homelands for political or economic reasons.

"Like most of the suspects arrested [in the terrorist plot] so far, these immigrants found dead-end jobs driving cabs and working in gas stations.

"Video tapes and newspapers, like the Sudanese monthly *El Fajr,* publicize Abdel Rahman's appeals for action against the U.S., which he refers to as a 'den of evil and fornication' ".

The plaintiffs, the company which publishes the Sudanese periodical referred to in the *Daily News* article and its owner, commenced this action to recover damages for libel. The plaintiffs maintain that the article, read as a whole, implies that they actively supported and promoted the terrorist plot. In denying the defendants' motion to dismiss the action, the Supreme Court concluded that the above-quoted passage in question is reasonably susceptible of a defamatory meaning with regard to the plaintiffs, in that "[t]he clear connotation from the article is that the video tapes are one sided appeals to promote the views of Abdel Rahman as is the publicity provided by newspapers such as *El Fajr*".

It is the role of the court to determine in the first instance whether particular words, viewed in context and given their natural meaning, are reasonably susceptible of a defamatory meaning *(see, Armstrong v Simon & Schuster,* 85 NY2d 373, 380; *Weiner v Doubleday & Co.,* 74 NY2d 586, 592, *cert denied* 495 US 930). If not, then the action should be dismissed *(see, Aronson v Wiersma,* 65 NY2d 592, 593-594). If so, then the com-

plaint is sufficient on its face and the issue of whether the statement in question was defamatory should be resolved by the trier of fact (see, Mahoney v Adirondack Publ. Co., 71 NY2d 31, 38; Scott v Cooper, 226 AD2d 360; McCormack v Port Washington Union Free School Dist., 225 AD2d 531). (Of course, there is the possibility that the statement might be deemed defamatory as a matter of law [see, Curry v Roman, 217 AD2d 314, 319], a position which the plaintiffs in this action did not seriously advance in opposition to the defendants' motion.)

Although the reference to the plaintiffs' periodical must be viewed in the context of the entire article, the question of whether the statement is reasonably susceptible of a defamatory meaning necessarily focuses on the potential import of the word "publicize", which is defined as "to bring to the attention of the public" or "give publicity to" (Webster's Third New International Dictionary [1981]). "Publicity" has several possible meanings, ranging from the objective dissemination of information to paid advertising or promotion (see, Webster's Third New International Dictionary [1981]). Acceptable synonyms for "publicize" range from announce and broadcast to advertise, promulgate, propagandize, and tout (see, Roget's 21st Century Thesaurus [1992]).

In addition to the various possible meanings of the word "publicize", the context of its use in the article in question must be examined. The defendants reported that videotapes and newspapers such as the plaintiffs' "publicize[d]" Abdel-Rahman's appeals for action against the United States. Presumably, the videotapes referred to in the article were not objective reports of Abdel-Rahman's militant objectives, but were articles of propaganda and promotion. Reference in the conjunctive could certainly be read as attributing similar motives to the plaintiffs' publication.

Given the broad range of meanings which can be imputed to the word "publicize," and the context of its use in the defendants' article, I must conclude that the article could reasonably be interpreted as reporting that the plaintiffs actively supported and promoted Abdel-Rahman's terrorist plot. Were the article to be given such an interpretation, the defendants could certainly be deemed to have defamed the plaintiffs (see, Annotation, Imputation of Allegedly Objectionable Political or Social Beliefs or Principles as Defamation, 62 ALR4th 314). I therefore conclude that the article in question is reasonably susceptible of a defamatory meaning, and vote to affirm the denial of the defendants' motion to dismiss the complaint.