■ JOSEPH AMODEI, Respondent, v NEW YORK STATE CHIROPRACTIC ASSOCIATION, Appellant. JOSEPH AMODEI, Appellant, v NEW YORK STATE CHIROPRACTIC ASSOCIATION et al., Respondents, et al., Defendants.—Order and judgment (one paper) of the Supreme Court, New York County (John A. K. Bradley, J.), entered on or about October 7, 1988, which granted the petition for a judgment, pursuant to CPLR article 78, annulling and setting aside respondent New York State Chiropractic Association's (Association) two-year suspension of petitioner's membership and which directed the Association to reinstate petitioner's membership, reversed, on the law, the said suspension reinstated, and the petition dismissed, without costs.

Order and judgment of the Supreme Court, New York County (David Edwards, Jr., J.), entered respectively, on February 17, 1989 and April 4, 1989, which granted the motion by the Association and defendants Jack Beige, Robert Matrisciano, Robert Kleinberg, Janice Fine, Laura Scharf and Mark

Holland to dismiss plaintiff's complaint as against the moving defendants pursuant to CPLR 3211 (a) (7), unanimously affirmed, without costs.

At issue in the article 78 proceeding is whether the charges upon which petitioner's suspension is founded were properly referred to the New York State Chiropractic Association's board of delegates for disciplinary action. Petitioner, a certified insurance consultant of the Association since 1973, was accused of violating insurance consultant guideline number 10 which provides, in relevant part: "The Chiropractic Consultant shall, at no time, make any remarks to the patient which may cause the treating doctor or his treatment regimen to be discredited in the eyes of the patient." As a result of complaints arising out of a consulting examination of one Janice L. Fine, performed for Geico Insurance Company, which were received from both the patient and her treating chiropractor, Robert Kleinberg, D.C., petitioner was charged with "unprofessional conduct". Charges were officially referred by nine members of the Association's insurance consultants committee, which held a hearing on the subject on October 28, 1986. A board of inquiry was appointed by the Association's president, which convened on April 28, 1987 to conduct a hearing.

The results of this hearing were reported by the president to the house of delegates on September 19, 1987. The board of inquiry found that petitioner "did comment negatively on the type and nature of the care Ms. Fine received in such a manner as to denigrate the treating doctor in the eyes of his patient and that Dr. Amodei did speculate to the patient as to the doctor's motives for not including certain modality treatments in such a manner as to denigrate the treating doctor in the eyes of this patient." The panel recommended suspension from the Association for a period of two years, which recommendation was adopted by the house of delegates.

We note, with reference to the dissenting opinion, that there is no question as to petitioner's freedom to comment on the effectiveness of the treatment received by the patient in his report to the insurer. Rather, at issue is the propriety of petitioner's comments *to the patient,* during a consultative examination conducted at the behest of an insurance company, in direct violation of the Association's guidelines for its certified insurance consultants. Indeed, we note that on this appeal, petitioner emphasizes the inconsistency between the disparaging remarks he allegedly made to Ms. Fine and the report he submitted to the insurer, which was devoid of negative comments regarding the treatment she received.

Petitioner contends that the insurance consultants committee, whose function is defined in the Association's constitution and bylaws as being "responsible for establishing and maintaining standards for the Insurance Consultants Panel of the organization", was without authority to hold a hearing and refer charges to the president of the Association. Petitioner asserts that the committee was misled as to the scope of its authority by Edward Patterson, who is identified in various documents as general counsel to the Association. In fact, as the IAS court pointed out, "Mr. Patterson has been disbarred based on allegations of larceny and perjury." Indeed, Mr. Patterson was also present at the board of inquiry hearing which established petitioner's guilt and at the meeting of the house of delegates which imposed the suspension. The minutes of the house of delegate's meeting specifically identify Mr. Patterson as general counsel.

The nature and propriety of Mr. Patterson's affiliation with the Association are not before us at this time. We note only that article 3, § 7 of the constitution and bylaws of the Association provides, "No less than five (5) regular members in good standing may file charges against any other member when sufficient cause exists by filing a notarized affidavit with the Secretary of this organization." There is no suggestion that the members of the insurance consultants committee were not regular members in good standing. Nor is there any reason advanced why, as members of a committee, they should be precluded from instituting disciplinary action that any five members of the Association could initiate. The provisions of the constitution and bylaws relating to the preferring of charges, hearing and formal disciplinary action have been complied with and cannot be said to have been unfairly applied *(Bloch v Veterans Corps of Artillery,* 61 AD2d 772).

The complaint, which alleges causes of action for defamation, prima facie tort, negligence and a private right of action for violation of the Notary Law (Executive Law § 135), was properly dismissed for failure to state a cause of action (CPLR 3211 [a] [7]). The defamation action is predicated on the use of the term "unprofessional conduct". It is clear, however, that its use comprises a constitutionally protected expression of opinion, describing the nature of the complaints lodged against plaintiff Dr. Amodei, and may not be the basis for recovery of monetary damages *(see, Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 380, *cert denied* 434 US 969; *Parks v Steinbrenner,* 131 AD2d 60). The determination that the words complained of constitute the expression of opinion is one of

law based upon the perception of an average person *(Steinhilber v Alphonse,* 68 NY2d 283, 290). Plaintiff's contention that the term implies unlawful conduct has no basis in the record.

The cause of action sounding in prima facie tort is insufficient as a matter of law for its failure to assert the intentional infliction of economic damage without excuse or justification *(Board of Educ. v Farmingdale Classroom Teachers Assn.,* 38 NY2d 397, 406; *Long v Beneficial Fin. Co.,* 39 AD2d 11, 14). The tort requires the plaintiff to plead "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful" *(Curiano v Suozzi,* 63 NY2d 113, 117). The motive must be one of disinterested malevolence, and where a proper motive supports the defendants' actions, such as the maintenance of appropriate professional standards or the resolution of grievances, recovery under a theory of prima facie tort is barred *(see, Marcella v ARP Films,* 778 F2d 112, 119 [2d Cir 1985]).

Similarly, the Notary Law (Executive Law § 135) provides no recovery of monetary damages under a private right of action in the absence of facts establishing that the alleged impropriety caused the plaintiff to sustain damages. Plaintiff has not made the requisite showing that the signatures on the affidavit preferring charges against him are false and that, but for the asserted notarial impropriety, the charges would not have been lodged against him *(see, Kainz v Goldsmith,* 231 App Div 171).

Finally, that portion of the complaint based upon a negligence theory, to the extent it does not duplicate the legally flawed causes of action based on other theories, fails to establish either the existence of a duty owed to plaintiff, a breach of such a duty, or causation *(see, Akins v Glens Falls City School Dist.,* 53 NY2d 325; *Wolfe v Samaritan Hosp.,* 104 AD2d 143). Concur—Murphy, P. J., Wallach and Rubin, JJ.

Kupferman and Asch, JJ., dissent in part in a memorandum by Kupferman, J., as follows: I would affirm for the reasons stated by Judge John A. K. Bradley at the IAS Part. It is undisputed that a two-year suspension of the petitioner's membership in the New York State Chiropractic Association has a profound effect on his ability to practice his profession. Accordingly, the proceedings which led to his suspension should be considered with a critical eye.

In substance, the charges sustained were to the effect that the petitioner found the treatment of a patient by a fellow chiropractor to be deficient and said so. If professionals could

not differ in their analysis of proper treatment in a given case, it would indeed be difficult to maintain any action for malpractice. If, for example, the Medical Society could suspend a physician who voluntarily testified against another physician as to the proper treatment of a patient, it would be difficult, if not impossible, to substantiate a claim. The statements here certainly do not approach hyperbole or invective. *(See, Hustler Mag. v Falwell,* 485 US 46.)

The respondent-appellant Association occupies a monopoly position with respect to chiropractic, and it should be subject to some supervision and control.

In this framework, the circumstances of the methods used in preferring charges and reaching the suspension conclusion, as delineated in this court's opinion, raise serious questions as to the justice of the result.