**Mary Lou WAIT, Plaintiff,**

v.

**BECK'S NORTH AMERICA, INC.; Brauerei Beck & Co.; John Lennon, and Brian Walsh, Defendants.**

No. 02–CV–0262.

United States District Court, N.D. New York.

Jan. 14, 2003.

Flink, Smith & Associates, LLC, Latham, NY (Edward Flink, Esq., of counsel), for Plaintiff.

Nixon Peabody LLP, Albany, NY (John E. Higgins, Esq., of counsel), for Defendants Beck's North American, Inc., Brauerei Beck & Co., and John Lennon.

Degraff, Foy, Holt–Harris & Kunz, LLP, Attorneys Albany, NY (Glen P. Doherty, Esq., of counsel), for Defendant Brian Walsh.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Mary Lou Wait commenced the instant action against the defendants in January 2001 in New York State court.

Invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332, defendants removed the action to federal court. Plaintiff asserts claims for: (1) violations of the New York State Human Rights Law, N.Y. Exec. Law § 296 ("HRL") (*first, second,* and *third* causes of action); (2) the intentional infliction of emotional distress (*fourth* cause of action); (3) the negligent infliction of emotional distress (*fifth* cause of action); (4) breach of contract (*sixth* cause of action); (5) breach of an implied contract (*seventh* cause of action); (6) breach of the covenant of good faith and fair dealing (*eighth* cause of action); (7) negligent supervision and/or retention (*ninth* cause of action); (8) defamation (*tenth* cause of action); and (9) battery, arising out of her employment with defendant Beck's North America, Inc ("BNA") (*eleventh* cause of action).

Defendants did not file an answer. Instead, defendants BNA, Brauerei Beck & Co., and John Lennon ("Lennon") now move to: (1) dismiss the *first, second, fourth, fifth, sixth, seventh, eighth, ninth, tenth,* and *eleventh* causes of action pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56; and (2) dismiss the Complaint in its entirety against defendant Brauerei Beck & Co. pursuant to Fed. R.Civ.P. 12(b)(2) and 12(b)(5). Defendant Brian Walsh ("Walsh") also moves to dismiss the Complaint against him pursuant to Fed.R.Civ.P. 12, or in the alternative, for summary judgment. The plaintiff opposes. Oral argument was heard on July 12, 2002, in Utica, New York. Decision was reserved.

## II. *FACTS*

The following facts are taken from the Complaint which for purposes of a motion

pursuant to Rule 12(b)(6), must be accepted as true. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996).[1]

Plaintiff was hired by Dribeck Importers[2] as a District Sales Manager in November 1997. (Compl. at ¶ 6.) In March 1999, plaintiff was promoted to the position of Regional Sales Manager. (*Id.* at ¶ 8.) Around the same time, Doug Hadlock ("Hadlock") was promoted to Vice President of Sales for the Northeast. (*Id.* at ¶ 11.) Hadlock became plaintiff's direct supervisor. (*Id.*)

Upon becoming Vice President of Sales, Hadlock began making comments to plaintiff such as inquiring whether it was her "time of the month," whether she had her "period," and stating that plaintiff's work problems were "a woman thing." (*Id.* at ¶¶ 12–13.) Hadlock also purportedly complained that he was "stuck with the only woman [Regional Sales Manager] in the company." (*Id.* at 13.) Hadlock told plaintiff's contacts at certain distributors that she was incompetent and inexperienced. (*Id.* at ¶ 14.) Hadlock also refused to provide plaintiff with the information and support necessary for her to do her job. (*Id.* at ¶ 15.) Hadlock also is alleged to have spread a rumor that plaintiff was having sexual relations with the BNA's Executive Vice President of Sales for the United States. Plaintiff frequently complained to BNA's Human Resources Department, but was advised that it was a personality problem that she would have to resolve herself. (*Id.* at ¶ 24.)

In September 1999, plaintiff complained to BNA's Chief Executive Officer, William Yetman. (*Id.* at ¶¶ 37–38.) Yetman did

---

1. As will be discussed *infra,* the instant motions will not be treated as motions for summary judgment pursuant to Fed.R.Civ.P. 56.

2. Dribeck Importers is now known as BNA. BNA is in the business of importing Beck's beer.

not take any disciplinary action against Hadlock. (*Id.* at ¶ 39.) Yetman did, however, change the reporting structure such that plaintiff would report to an area director, rather than directly to Hadlock. (*Id.*) Despite the change in the reporting structure, plaintiff continued to have frequent interaction with Hadlock. (*Id.* at ¶¶ 43–45.)

In or about January 2001, BNA hired a new CEO, defendant John Lennon. (*Id.* at ¶ 46.) In June 2001, BNA hired a Division Vice President for the Northeast, defendant Brian Walsh. (*Id.*) Walsh became plaintiff's new direct supervisor. (*Id.*) Plaintiff first met Walsh on August 15, 2001. (*Id.* at ¶ 46.) Walsh told plaintiff that she would have to "re-interview" for her job. (*Id.*) After the interview, there was a dinner meeting with other BNA employees and some distributor representatives. (*Id.* at ¶ 50.) After dinner, the group went to a bar for some drinks. (*Id.* at ¶ 50.) While at the bar, Walsh placed his arms around plaintiff's waist and grabbed her stomach. (*Id.* at ¶¶ 50 and 159) Plaintiff attempted to pull away. (*Id.* at ¶ 50) Several other times that night, Walsh put his arm around plaintiff and pulled her close to him. (*Id.*) In October 2001, while at a sales meeting in Chicago, Walsh asked plaintiff for a hug. (*Id.* at ¶ 66.) When plaintiff declined to give Walsh a hug, he persisted. (*Id.*) Ultimately, Walsh walked away. (*Id.*)

Plaintiff complained to management and the Human Resources Department about Walsh's conduct. (*Id* at ¶¶ 54–55.) The Complaint alleges that Walsh then began a campaign of retaliation against plaintiff by undermining her efforts to do her job and otherwise making it impossible for her to do her job. (*Id.* at ¶ 66.) For example, Walsh met with other regional sales managers to discuss specifics about their territories and to provide them with information about marketing plans and budgets, but did not meet with plaintiff. (*Id.* at ¶ 69.) Walsh also failed to provide plaintiff with the information necessary for her to prepare the required 2002 marketing and budget plans for her territory. (*Id.* at ¶¶ 70–74.) The Complaint alleges that this pattern of harassment has caused plaintiff anxiety and mental distress, and that she has been discriminated against with regard to the terms and conditions of her employment on account of her gender. (*Id.* at ¶¶ 82, 97.)

## III. *STANDARD OF REVIEW*

Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12, or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Based on the record presented, it does not appear that the parties have engaged in significant discovery, if any at all.[3] Because defendants have asked for relief pursuant to Rule 12(b)(6), and the parties have not had sufficient opportunity to discover and produce those facts that may be pertinent for a summary judgment motion, defendants' motions will be treated as ones made pursuant to Rule 12, and not as motions for summary judgment pursuant to Rule 56. *See Patel v. Searles*, No. 99–Civ–1230, 2000 WL 306881, at *1 (D.Conn. Jan. 6, 2000); *Llanes v. EMSA Limited P'ship*, 996 F.Supp. 314, 316 (S.D.N.Y.1998); *Silveri v. Mirsky*, Nol 95–Civ–10234, 1997 WL 473544, at *1 n. 1 (Aug. 19, 1997). Accordingly, matters outside the pleadings will be excluded. *See* Fed.R.Civ.P. 12(b).

---

**3.** For example, there has not been a Rule 16 conference and the parties have not filed the report contemplated by Fed.R.Civ.P. 26(f). *See* N.D.N.Y.L.R. 16.1(c). In fact, the Rule 16 conference was adjourned without date pending a decision on the motions to dismiss. (*See* dkt. no. 8.)

The Supreme Court recently affirmed that " '[a] court may dismiss a complaint [under Fed.R.Civ.P. 12] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). With respect to employment discrimination cases, the Supreme Court rejected this Circuit's practice of requiring a complaint to allege a *prima facie* case of discrimination to survive a motion to dismiss. *Swierkiewicz,* 534 U.S. at 508–14, 122 S.Ct. 992. The Court held that such a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must only include 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* at 512, 122 S.Ct. 992 (quoting Fed.R.Civ.P. 8(a)). "This simplified notice pleading relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.*

> However unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able to prove an alleged fact such as mental state, the court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference. Whether the plaintiff can produce evidence to create a genuine issue with regard to his allegation is to be resolved through a motion for summary judgment.

*Phelps v. Kapnolas,* 308 F.3d 180, 186–187 (2d Cir.2002). Thus, a complaint is sufficient if it gives the defendant fair notice of the plaintiff's claims, the grounds upon which they rest, and states claims upon which relief could be granted. *Swierkiewicz,* at 514, 122 S.Ct. 992.

## IV. DISCUSSION

### A. Personal Jurisdiction Over Brauerei Beck & Co.

Plaintiff concedes that Brauerei Beck & Co. has not been served with process and that personal jurisdiction is lacking. (Pl. Mem. of Law at 10 n. 3.) Accordingly, the Complaint must be dismissed against Brauerei Beck & Co.

### B. Negligent Infliction of Emotional Distress and Negligent Retention and Supervision

Plaintiff "does not oppose" dismissal of her *fifth* and *ninth* causes of action and, therefore, they must also be dismissed. (Pl. Mem. of Law at 10 n. 3.)

### C. Plaintiff's Hostile Work Environment Claims

#### 1. Hostile Work Environment Based on Discrimination Toward Others

Defendants move to dismiss plaintiff's *first* and *second* causes of action to the extent that she seeks to recover based on the alleged sexual harassment of other women. Indeed, plaintiff makes several references throughout her Complaint to alleged harassment sustained by other female employees of BNA. (*See, e.g.,* Compl. at ¶¶ 53, 60, 64, 65, and 67.) Defendants' argument that harassment directed at other co-workers is only relevant provided that plaintiff was present when the alleged harassment occurred or knew of the harassment while it was ongoing is untenable and contrary to settled Second Circuit precedent.[4]

---

4. Reference to cases interpreting Title VII is

relevant because "New York courts require

While the prohibition against hostile work environment discrimination "affords no claim to a person who experiences it by hearsay," *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 182 (2d Cir. 2001), and fails "to allege or prove that harassment of other women adversely affected the terms and conditions of her own employment," "evidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment discrimination." *Id.* at 190. " 'Because the crucial inquiry focuses on the nature of the workplace environment *as a whole*, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim.' " *Id.* (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)) (emphasis in *Leibovitz* ) (and cases cited therein). Thus, in *Schwapp v. Town of Avon,* 118 F.3d 106, 111 (2d Cir.1997), for example, the Second Circuit held that a district court erred in excluding from consideration alleged incidents of racial discrimination that occurred outside of the plaintiff's presence. One of the alleged incidents occurred before the plaintiff's employment with the defendant, and two other incidents involved hostility towards minority groups of which the plaintiff was not a member. *See id.* The Second Circuit stated that:

> The Supreme Court has cautioned us to consider the totality of the circumstances in cases such as this. *See [Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ]. . . . The mere fact that [the plaintiff] was not present when a racially derogatory comment was made will not render that comment irrelevant to [her] hostile work environment claim. Just as a racial epithet need not be directed at a plaintiff in order to contribute to a hostile work environment . . ., the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment. . . . [S]uch conduct, "if part of a pervasive or continuing pattern of conduct, was surely relevant to show the existence of a hostile environment." [*Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997) ].

*Schwapp,* 118 F.3d at 111–12.

Here, the Complaint alleges that plaintiff personally experienced a discriminatory hostile work environment and that "[p]laintiff's working conditions were made even more intolerable by her knowledge that other women were also subject to sexual harassment by BNA." (Compl. at ¶ 89.) These are permissible allegations in support of her discrimination claims, and may serve to demonstrate the existence, and extent, of a hostile work environment.

### 2. Acts Occurring Outside of New York

■ Defendants also argue that plaintiff's Complaint should be dismissed to the extent that it relies upon discriminatory acts alleged to have occurred outside the State of New York. While the courts have held that N.Y. Exec. Law § 298–a(3) only provides an administrative remedy for discriminatory acts committed outside the state by non-resident defendants,[5] *see Bass v. World Wrestling Federation Entertainment, Inc.*, 129 F.Supp.2d 491, 505

---

the same standard of proof for claims brought under section 296 of the Human Rights Law as for those brought under Title VII." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998).

**5.** None of the defendants in this case are New York residents.

(E.D.N.Y.2001); *Ghandour v. Am. Univ. of Beirut,* No. 97–Civ–7741, 1998 WL 856114, at *2 (S.D.N.Y. Dec. 9, 1998); *Wilcox v. PRC of New York LP,* No. 95–Civ–1292, 1997 WL 141682, at *3 (N.D.N.Y. Mar. 24, 1997); *Sherwood v. Olin Corp.,* 772 F.Supp. 1418, 1422–23 (S.D.N.Y.1991), read liberally, plaintiff's Complaint complains of discriminatory and/or retaliatory treatment that may have occurred within the State of New York (*see, e.g.,* Compl. at ¶¶ 26, 48, 49, 50, 52, 75.). This is sufficient to survive defendants' motion to dismiss. *See Bass,* 129 F.Supp.2d at 506.[6]

### 3. *Whether Plaintiff Sustained Sufficiently Severe or Pervasive Harassment*

██ Defendant Walsh next moves to dismiss on the ground that the complained of conduct is not sufficiently severe or pervasive to sustain a cause of action under the HRL. Defendant correctly points out that "sexual harassment is actionable . . . only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working condition." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). However, on a motion to dismiss, a plaintiff need not lay bare her proof or demonstrate a prima facie case of a hostile work environment. *See Swierkiewicz,* 534 U.S. at 511–13, 122 S.Ct. 992; *Phelps,* 308 F.3d at 186–87. Rather, plaintiff need only "give [defendant] fair notice of what [her] claims are and the grounds upon which they rest . . . [and] state claims upon which relief could be granted." *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992. Plaintiff has fulfilled this obligation. The Complaint alleges an ongoing course of harassment by Hadlock and Walsh including inappropriate comments, inappro-

priate touching on several instances, inappropriate conduct toward other females, and efforts by Walsh and Hadlock to undermine plaintiff's work. The details in the Complaint give defendants fair notice of plaintiff's claims, the grounds upon which they rest, and set forth claims upon which relief could be granted under the HRL.

### 4. *Individual Liability Under the HRL*

██ Defendant Walsh also argues that he cannot be held individually liable under the HRL. The New York State Court of Appeals has held that "[a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination based on . . . sex under New York's Human Rights Law . . . if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984). Thus, individual liability is sharply circumscribed under section 296(1). Plaintiff's Complaint alleges that Walsh had the authority to hire and fire. (*See* Compl. at ¶¶ 5, 48) This allegation is sufficient to withstand defendant's motion to dismiss.

██ Moreover, in *Tomka v. Seiler,* 66 F.3d 1295, 1317 (2d Cir.1995), the Second Circuit held that section 296(6)'s aider and abettor provision supplies a basis for imposing liability upon individuals who actually participate in the conduct giving rise to the discrimination claim. *See also Briggs v. New York State Dept. of Transp.,* 233 F.Supp.2d 367, 378 (N.D.N.Y.2002); *Petrosky v. New York State Dep't of Motor*

---

**6.** It is unnecessary to determine at this time whether evidence of discriminatory acts that occurred outside of New York may be used to support her HRL claim. *See id.* at 506 n. 8.

*Vehicles,* 72 F.Supp.2d 39, 64–65 (N.D.N.Y. 1999). Plaintiff's Complaint alleges that Walsh engaged in the conduct giving rise to her claim. This allegation also is sufficient to withstand the motion to dismiss.

### D. *Intentional Infliction of Emotional Distress*

■ Defendants also move to dismiss the *fourth* cause of action for the intentional infliction of emotional distress ("IIED"). Defendants argue that: (1) any conduct that occurred before January 22, 2001 is barred by the statute of limitations; (2) plaintiff has set forth insufficient allegations of extreme and outrageous conduct; (3) BNA may not be held liable under the theory of respondeat superior for intentional torts; and (4) a plaintiff may not pursue a claim for the IIED where the ambit of the claim falls within traditional tort liability. Plaintiff responds that pre-January 22, 2001 conduct should be allowable pursuant to a continuing violation theory, the allegations in the Complaint adequately set forth a claim for relief under the tort of the IIED, and BNA should be liable for its conduct in failing to remedy the situation.

### 1. *Statute of Limitations*

In New York, the statute of limitations for intentional torts, such as the IIED, is one year. N.Y.C.P.L.R. § 215; *Niles v. Nelson,* 72 F.Supp.2d 13 (N.D.N.Y.1999). Some courts have held that the continuing violation theory can be applied to the IIED provided that the final actionable event occurred within the one year statute of limitations. *Scott v. Rosenthal,* No. 97–

Civ.2743, 2001 WL 282712, at *7 (S.D.N.Y. Mar. 22, 2001); *Dana v. Oak Park Marina, Inc.,* 230 A.D.2d 204, 660 N.Y.S.2d 906, 911 (4th Dep't 1997); *Bonner v. Guccione,* 916 F.Supp. 271, 277 (S.D.N.Y.1996); *see also Fusco v. Perry,* No. 92–CV–1525, 1995 WL 65067, at *4 (N.D.N.Y. Feb. 9, 1995).

Assuming, without deciding, that the continuing violation is applicable to intentional torts, it may not be invoked under the facts and circumstances of this case. The Complaint alleges a course of conduct by Hadlock that began in March 1999 and persisted until December 2000. There are no allegations that Hadlock engaged in any extreme or outrageous conduct after January 2001 or was otherwise involved any such conduct after January 2001.[7] Similarly, there are no allegations that Walsh or Lennon engaged in any extreme or outrageous conduct before January 2001.[8] Accordingly, it cannot be said that Walsh's or Lennon's conduct after January 22, 2001[9] was related to Hadlock's pre-January 2001 conduct. Because any incidents alleged to have occurred prior to January 22, 2001 are unrelated to the post-January 22, 2001 conduct, they cannot be said to be part of the same course of conduct and the continuing violation theory, therefore, is inapplicable. Thus, the pre-January 22, 2001 incidents are time barred.

### 2. *Failure to State a Claim*

■ In New York, the elements of a claim for the intentional infliction of emotional distress are (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of

---

7. The Complaint does allege that Hadlock trained Walsh and "briefed Walsh as to his version of the events that transpired relative to plaintiff." (Compl. at ¶ 47.) This, however, does not suggest that Hadlock actually participated, or was otherwise involved, in Walsh's conduct towards plaintiff.

8. In fact, neither Walsh nor Lennon were employed by BNA before January 2001. (Compl. at ¶ 46.)

9. January 22, 2001 is one year before plaintiff filed her Complaint.

causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress. *Graupner v. Roth*, 293 A.D.2d 408, 410, 742 N.Y.S.2d 208 (1st Dept. 2002). Although defendants may ultimately be able to demonstrate that the post-January 22, 2001 acts do not rise to the level of extreme and outrageous conduct necessary to sustain this cause of action, this issue cannot be resolved on the instant motion to dismiss. *See Phelps*, 308 F.3d at 186–87. Viewing the Complaint liberally and drawing all reasonable inferences in plaintiff's favor, it alleges a continuing course of sexual harassment, unwanted touching, unwarranted reprimands, interference with plaintiff's job performance, and other conduct that may state a claim for the intentional infliction of emotional distress. These allegations are sufficient to apprise defendants of the nature of plaintiff's claim, the facts upon which they are based, and adequately state a claim upon which relief could be granted. Whether these acts and any other acts that may come out during the course of discovery meet the threshold of extreme and outrageous conduct is more appropriately decided on a motion for summary judgment or at trial. *See id.*

## 3. *Respondeat Superior Liability*

■ Under New York law, an employer may be held liable for the intentional torts of its employees provided the acts were within the scope of the employee's employment. *See Girden v. Sandals Int'l*, 262 F.3d 195, 205 (2d Cir.2001); *Cornell v. State of New York*, 46 N.Y.2d 1032, 1033, 416 N.Y.S.2d 542, 389 N.E.2d 1064, *reargument denied*, 47 N.Y.2d 951, 419 N.Y.S.2d 1028, 393 N.E.2d 1051 (1979); *Riviello v. Waldron*, 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979); *see also Buck v. Zwelling*, 272 A.D.2d 895, 896,

707 N.Y.S.2d 281 (4th Dep't 2000); *Patterson v. Khan*, 240 A.D.2d 644, 659 N.Y.S.2d 90 (2d Dep't 1997). "[T]he employer may be liable when the employee acts ... intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933, 693 N.Y.S.2d 67, 715 N.E.2d 95 (1999). An employer is not liable under respondeat superior "for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business." *Heindel v. Bowery Savings Bank*, 138 A.D.2d 787, 525 N.Y.S.2d 428 (3d Dep't 1988).

■ Although Walsh may have committed the alleged acts during business hours and abused the authority of his position within BNA, his conduct cannot be said to have been within the scope of, or a natural incident of, his employment. *See Mary KK v. Jack LL*, 203 A.D.2d 840, 841, 611 N.Y.S.2d 347 (3d Dep't 1994) (employer not vicariously liable for teacher who molested student during school hours and on school property). Walsh's conduct consisted of an alleged sexual battery, offensive touching, unwarranted reprimands, and attempts to undermine plaintiff's work. Inappropriate sexual comments, gestures and physical contact have been held to be outside the scope of employment. *See Scott v. Bell Atlantic Mobile*, 2002 WL 550969, at *6 (S.D.N.Y. Apr. 11, 2002) ("Acts of sexual harassment committed for personal motives are not within the scope of an employee's employment."); *N.X. v. Cabrini Med. Center*, 280 A.D.2d 34, 37–38, 719 N.Y.S.2d 60 (1st Dep't 2001), *aff'd*, 97 N.Y.2d 247, 739 N.Y.S.2d 348, 765 N.E.2d 844 (2002); *Judith M.*, 93 N.Y.2d at 933, 693 N.Y.S.2d 67, 715 N.E.2d 95 (sexual abuse is a departure of employee's duties for personal motives unrelated to the employer's business); *Escobar v. Spar-*

*tan Assemblies, Inc.*, 267 A.D.2d 272, 273, 700 N.Y.S.2d 206 (2d Dep't 1999); *Nicollette T. v. Hosp. for Joint Diseases/Orthopaedic Inst.*, 198 A.D.2d 54, 603 N.Y.S.2d 146 (1st Dep't 1993); *see also Cornell*, 46 N.Y.2d at 1033, 416 N.Y.S.2d 542, 389 N.E.2d 1064. Undermining plaintiff's work which, of course, was the work of BNA, does not further BNA's interest, and therefore, cannot be said to be within the scope, or a natural incident, of Walsh's employment. Thus, neither Lennon nor BNA can be held vicariously liable.[10]

### 4. Whether Plaintiff's IIED Claim Is Encompassed by Other Tort Theories

■ Some New York courts have held that "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." *Hansel v. Sheridan*, 991 F.Supp. 69, 75 (N.D.N.Y. 1998) (and cases cited therein), *but see Bender v. City of New York*, 78 F.3d 787, 792 (2d Cir.1996) (expressing doubt that there is a generalized rule in New York that a claim for the IIED cannot be maintained where it overlaps other traditional tort claims). Here, plaintiff's claim of a sexual battery is covered by her tort claim for battery. Battery is, of course, a traditional tort. Some of the allegations that Walsh attempted to undermine plaintiff's work may fall within her defamation claim, another traditional tort. The other allegations in support of her claim for the IIED (sexual harassment, other instances of undermining her work, and unwarranted reprimands), however, do not fall well within the ambit of traditional tort remedies. Because this other conduct does not fall with-

in the ambit of any traditional torts, plaintiff may maintain a claim for the IIED.

### E. Defamation

Defendants seek dismissal of plaintiff's defamation claim (*tenth* cause of action) on the grounds that: (1) their statements are protected by the common interest privilege; (2) their statements fall within the single-instance rule; and/or (3) their statements are non-actionable expressions of opinion.

■ Under New York law, statements of opinion are absolutely protected. *See Celle v. Filipino Reporter Enter., Inc.*, 209 F.3d 163, 178 (2d Cir.2000). "Whether a potentially actionable statement is one of fact or opinion is a question of law and depends on whether a reasonable reader or listener would understand the complained-of assertions as opinion or statements of fact." *Millus v. Newsday, Inc.*, 89 N.Y.2d 840, 842, 652 N.Y.S.2d 726, 675 N.E.2d 461 (1996) (internal citations and quotations omitted), *cert. denied*, 520 U.S. 1144, 117 S.Ct. 1313, 137 L.Ed.2d 476 (1997). A "pure opinion" is a statement of opinion which is accompanied by a recitation of the facts upon which it is based. *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289, 508 N.Y.S.2d 901, 501 N.E.2d 550 (1986). "Opinions, false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions, provided that the facts supporting the opinions are set forth." *Rinaldi v. Holt Rinehart & Winston*, 42 N.Y.2d 369, 380, 397 N.Y.S.2d 943, 366 N.E.2d 1299, *cert. denied*, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977). The New York courts employ a four part test to assist in determining whether alleged defamatory state-

---

**10.** It is unclear from plaintiff's memorandum of law how Lennon, BNA's Chief Executive Officer, can be held personally liable under the theory of respondeat superior. Lennon was not plaintiff's employer, BNA was.

ments are protected opinion or imply actionable facts.

The factors are:

1) "an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous";

2) "a determination of whether the statement is capable of being objectively characterized as true or false";

3) "an examination of the full context of the communication in which the statement appears"; and

4) "a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact."

*Steinhilber,* 68 N.Y.2d at 292, 508 N.Y.S.2d 901, 501 N.E.2d 550 (internal quotation marks and citations omitted) (quoting *Ollman v. Evans,* 750 F.2d 970, 976 (D.C.Cir.1984) (en banc) (plurality opinion)).

*Celle,* 209 F.3d at 178–79.

The Court of Appeals of New York has made clear, however, that a proper analysis should not consist of a mechanical enumeration of each factor adopted in *Steinhilber.* Instead, the court should look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.

*Flamm v. Am. Ass'n of Univ. Women,* 201 F.3d 144, 153 (2d Cir.2000) (internal quotations and citations omitted).

■ Applying these factors and viewing the broader context in which the statements were made, Walsh's statements are constitutionally protected statements of opinions. Statements that someone has acted unprofessionally or unethically generally are constitutionally protected statements of opinion. *See, e.g., Tasso v. Platinum Guild Int'l,* No. 94 Civ. 8288, 1998 WL 841489, at *5–6 (S.D.N.Y. Dec. 3, 1998) (statements that plaintiff was "unethical, untrustworthy and unprofessional" and "incompetent" are non-actionable opinion); *Gavenda v. Orleans County,* No. 95 Civ. 0215E, 1997 WL 65870, at *8, (W.D.N.Y. Feb. 10, 1997) (statements that plaintiff was "incompetent," and "there had been problems with her before and she wasn't doing her job right" were non-actionable opinion); *Amodei v. New York State Chiropractic Assn.,* 160 A.D.2d 279, 280, 553 N.Y.S.2d 713, *aff'd,* 77 N.Y.2d 890, 568 N.Y.S.2d 909, 571 N.E.2d 79 (accusation that chiropractor engaged in "unprofessional conduct" was opinion); *Park v. Capital Cities Communications,* 181 A.D.2d 192, 195–196, 585 N.Y.S.2d 902 (4th Dep't 1992) (characterization of eye surgeon as "rotten apple" was opinion), *leave to appeal denied,* 81 N.Y.2d 879, 597 N.Y.S.2d 929, 613 N.E.2d 961 (1993); *Epstein v. Bd. of Trustees of Dowling College,* 152 A.D.2d 534, 535, 543 N.Y.S.2d 691 (2d Dep't 1989) (statements accusing a college professor of "lying, deceiving, making false promises, not advising, ill advising, [and] misleading" are protected expressions of opinion); *Hollander v. Cayton,* 145 A.D.2d 605, 606, 536 N.Y.S.2d 790 (2d Dep't 1988) (statements that a physician was "immoral," "unethical" and "mismanaged cases" were statements of opinion). Similarly, an evaluation of an employee's performance also constitutes a statement of non-actionable opinion. *See Brattis v. Rainbow Advertising Holdings, L.L.C.,* No. 99–Civ-10144, 2000 WL 702921, at *3 (S.D.N.Y. May 31, 2000); *Miller v. Richman,* 184 A.D.2d 191, 193, 592 N.Y.S.2d 201 (4th Dep't 1992); *Williams v. Varig Brazilian Airlines,* 169 A.D.2d 434, 438, 564

N.Y.S.2d 328 (1st Dep' t), *appeal denied,* 78 N.Y.2d 854, 573 N.Y.S.2d 467, 577 N.E.2d 1059 (1991). These types of statements or evaluations often have no precise meaning, are not capable of being objectively characterized as true or false, and are merely a general reflection of the speaker's viewpoint.

 Walsh's statements constitute his opinions of plaintiff's performance with respect to a certain business arrangement. His statements do not have a precise meaning and are not capable of being objectively verified as true or false. Furthermore, looking at the broader context in which the statements are alleged to have been made, no reasonable listener would understand that Walsh was conveying facts about plaintiff. The Complaint alleges that Walsh stated that plaintiff had not followed procedures, went behind his back, and acted without authorization, and therefore, acted unprofessionally and unethically. (Compl. at ¶ 77.) Thus, Walsh disclosed the facts upon which his statement that plaintiff was unprofessional and/or unethical was based. There are no allegations that any of the listeners believed Walsh to be asserting statements of fact. Plaintiff continues to work for BNA, and there were no adverse consequences to her employment from Walsh's statements. Accordingly, Walsh's statements are pure expressions of opinion.[11]

### F. Breach of Contract

Defendants also move to dismiss the breach of contract claims (*sixth, seventh*

and *eighth* causes of action) on the grounds that: (1) there can be no contractual agreements between plaintiff and the individual defendants; (2) BNA's Personnel Guidelines Handbook did not create a contractual relationship; and (3) New York does not recognize the implied covenant of good faith and fair dealing in employment relationships.

### 1. Individual Defendants

 The Complaint does not allege or infer any basis for a contractual relationship between plaintiff and the individual defendants. Neither of the individual defendants began working for BNA until after plaintiff was already working there. Accordingly, the *sixth, seventh,* and *eighth* causes of action must be dismissed as to the individual defendants.

### 2. Whether the Personnel Guidelines Created a Contractual Relationship

 In her Memorandum of Law, plaintiff states that she "did not allege, and does not now contend that the Handbook creates a contract of employment, or that she was entitled to a 'guarantee of any specific working conditions.'" (Pl. Mem. of Law at 29.) Instead, plaintiff maintains that "all parties were bound to follow the Anti–Harassment Policy and Conduct Guidelines" contained in BNA's Personnel Guidelines (hereinafter the "Handbook").[12] (*Id.*)

---

11. Because Walsh's statement are non-actionable, it is unnecessary to consider defendants' arguments that the statements are protected by the common interest privilege or the single-instance rule.

12. The Handbook may be considered in connection with the instant motion to dismiss because it is referenced in the Complaint and integral to plaintiff's sixth, seventh, and

eighth causes of action. "[T]he complaint is deemed to include any ... statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (internal quotations and citation omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral'

The plain language of the Handbook disclaiming the creation of any contractual or other rights precludes plaintiff's argument. As the New York Court of Appeals has explained:

> Routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements. That would be ... unwise .... It would subject employers who have developed written policies to liability for breach of employment contracts upon the mere allegation of reliance on a particular provision. Clearly that cannot be, especially in light of conspicuous disclaiming language. An employee seeking to rely on a provision arguably creating a promise must also be held to reliance on the disclaimer. Here we conclude that such disclaimer prevents the creation of a contract and negates any protection ... plaintiff may have inferred from the manual. ...

*Lobosco v. New York Tel. Co.*, 96 N.Y.2d 312, 317, 727 N.Y.S.2d 383, 751 N.E.2d 462 (2001).

It is undisputed that the very first page of the Handbook contains the following language:

> This handbook ... is a summary of guidelines and should not be considered as creating any rights, contract or guarantee of employment, of benefits, or working conditions between any employee and the company. At any time the company may change, supplement or discontinue these guidelines.

(Green Aff., Ex. H, p. 1.) Such a disclaimer negates the elements necessary to contract formation; namely, mutual assent and consideration. *See Maas v. Cornell Univ.*, 94

N.Y.2d 87, 93–94, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999); *see also Baron v. Port Auth. of New York and New Jersey*, 271 F.3d 81, 85–88 (2d Cir.2001) ("[W]here a sufficiently unambiguous disclaimer, conspicuously placed in the employee handbook such that the employee reasonably could be expected to read it is at issue, the totality of the circumstances inquiry is unnecessary; the implied contract claim may be dismissed as a matter of law."). Although plaintiff contends that she relied on the provision of the Handbook that provides that the policies "are considered binding both for Beck's North American and the employee," such reliance is not reasonable in light of the other language on that very same page that the policies are not intended to create any rights, contracts or working conditions, and that BNA retained the right to change the policies at their whim and at any time. Moreover, contrary to plaintiff's argument, the Handbook did not merely retain BNA's right to discharge plaintiff at-will, but expressly precluded reliance upon the Handbook as the foundation of any right or contract. Further, aside from her conclusory allegation of detrimental reliance upon BNA's policies, plaintiff pleads no set of facts that, if true, would support a finding of reliance sufficient to find the formation of a contract. Accordingly, no contractual relationship, express or implied, was formed.

### 3. *Implied Covenant of Good Faith and Fair Dealing*

New York does recognize that in appropriate circumstances an obligation of good faith and fair dealing on the part of a party to a contract may be implied and, if implied will be enforced. In such instances the implied obligation is in aid

---

to the complaint." *Id.* (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62

F.3d 69, 72 (2d Cir.1995)).

and furtherance of other terms of the agreement of the parties. No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship. *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).

As discussed, BNA did not contract with plaintiff to provide a work environment free of discrimination and harassment, investigate plaintiff's complaints, adhere to its anti-harassment policies and conduct guidelines, or to discipline employees found to have violated the company's policies (the benefits claimed by plaintiff in her Complaint). (*See* Compl. at ¶ 148.) A claim of breach of the implied covenant of good faith and fair dealing "may not be used as a substitute for a nonviable claim of breach of contract." *Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 73, 709 N.Y.S.2d 74 (1st Dep't 2000). Because there were no such terms in the contractual relationship, and BNA was under no such obligations, BNA cannot be said to have done anything to injure plaintiff's rights to these claimed benefits, or to have otherwise breached any covenant to act fairly and in good faith.

### G. *Battery*

Lastly, defendant Walsh moves to dismiss the *eleventh* cause of action asserting a claim for battery on the ground that plaintiff does not allege harmful or offensive conduct. "To recover damages for battery, a plaintiff must prove that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent." *Bastein v. Sotto*, 299 A.D.2d 432, 433, 749 N.Y.S.2d 538 (2d Dep't 2002). The Complaint alleges that "Walsh intentionally and repeatedly touched plaintiff in an offensive manner by putting his arm around her waist and firmly gripping her stomach and by putting his arm around her shoulder and holding her close to him," and that Walsh's conduct constituted "sexual contact." (Compl. at ¶ 159.) The Complaint further alleges that plaintiff did not consent to this contact. (Compl. at ¶ 159.)

A person of ordinary sensibilities likely would not want to be touched in such a manner on repeated occasions without their consent. This is particularly true where, as here, this was the first meeting between plaintiff and Walsh. Contrary to Walsh's assertion, this contact is not part of the ordinary incidences of everyday life. Whether on the job or socializing over drinks at a bar, individuals remain subject to the ordinary rules of tort liability. While being pressed up against while moving about in a crowded bar, or being tapped on the shoulder to get one's attention may not be actionable, being groped by a virtual stranger is. The allegations in the Complaint sufficiently apprise defendants of the nature of plaintiff's claim, and state a claim upon which relief can be granted. *See Griffen v. Mercer*, No. 101146/96, 1998 WL 1050968, at *11 (N.Y.Sup. Mar. 25, 1998).

### V. *CONCLUSION*

There is no personal jurisdiction over defendant Brauerei Beck & Co. Plaintiff has agreed to the dismissal of her *fifth* and *ninth* causes of action. Plaintiff has adequately pled a claim of sexual harassment discrimination. Defendant Walsh may be held individually liable because he is alleged to have actually participated in the discriminatory conduct. The Complaint adequately states a claim for the intentional infliction of emotional distress against Walsh, however, all pre-January 22, 2001 incidents are time barred, and BNA and Lennon may not be held liable under a

theory of respondeat superior. Walsh's alleged defamatory statements are constitutionally protected statements of opinion. The Handbook did not create a contractual relationship between plaintiff and defendants. The Complaint has stated a cause of action for common law battery.

Accordingly, it is

ORDERED that:

1. Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART;

2. The complaint against defendant Brauerei Beck & n Co. is DISMISSED, without prejudice;

3. Plaintiff's Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action are DISMISSED;

4. Plaintiff's Fourth cause of action (the intentional infliction of emotional distress) is DISMISSED against defendants Beck's North America, Inc. and John Lennon; and all pre-January 22, 2001 conduct is time-barred;

5. In all other regards, defendants' motions are DENIED; and

6. Defendants Beck's North America, Inc., John Lennon, and Brian Walsh shall file and serve answers to the remaining causes of action on or before January 29, 2003.

IT IS SO ORDERED.